UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALIX NAZON, | |
|                     Plaintiff, | CIVIL ACTION NO.: 21 Civ. 8680 (AT) (SLC) |
|      -v- | **REPORT AND RECOMMENDATION** |
| TIME EQUITIES, INC., | |
|                    Defendant. | |

**SARAH L. CAVE**, United States Magistrate Judge.

**TO THE HONORABLE ANALISA TORRES**, United States District Judge:

## I.    INTRODUCTION

Pro se Plaintiff Alix Nazon ("Nazon") asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA"), the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), 42 U.S.C. § 1981 ("Section 1981"), New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), against his former employer, Time Equities, Inc. ("TEI").  (See ECF No. 13 (the "Amended Complaint")).  Nazon alleges that, during his 24-year employment at TEI, he was subjected to discrimination, a hostile work environment, and retaliation because of his race, age, sex, national origin, and disability, resulting in his resignation in October 2020.  (See ECF No. 13 at 1–14).[1]

---

[1] Citations to page numbers refer to the ECF-assigned pagination.

TEI has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Nazon's Amended Complaint for failure to state a claim.  (ECF No. 19 (the "Motion")).  Nazon has opposed the Motion and requested leave to amend (the "Request").  (ECF No. 22 (the "Opposition")).

For the reasons set forth below, I respectfully recommend that TEI's Motion be GRANTED, Nazon's Request be DENIED, and this action be DISMISSED.

## II.   BACKGROUND

### A.  Factual Background

The following facts are drawn from the Nazon's allegations in the Amended Complaint, which are presumed true for purposes of deciding the Motion.  See Rosen v. N.Y.C. Dep't of Educ., No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *2 (S.D.N.Y. Aug. 27, 2019).  In addition, Nazon "asks that the Court read any new additional facts asserted in [the Opposition] as supplementing the operative [Amended] [C]omplaint[.]"  (ECF No. 22 at 1).  Given Nazon's pro se status, it is appropriate to do so and, accordingly, the Court has also considered the allegations in his Opposition and his more than 100 pages of exhibits to the extent "they are consistent with the facts he alleges in the [Amended] Complaint."  Evans v. City of New York, No. 21 Civ. 8660 (JPC), 2022 WL 1172740, at *1 n.1 (S.D.N.Y. Apr. 20, 2022); see Henning v. N.Y.C. Dep't of Corr., No. 14 Civ. 9798, 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016) ("Although this allegation appears in his opposition papers, the Court—consistent with its duty to liberally construe pro se pleadings— will credit Plaintiff's assertion in evaluating the sufficiency of his complaint."); White v. Schriro, No. 14 Civ. 3204 (AT) (FM), 2015 WL 4470168, at *1 (S.D.N.Y. July 15, 2015) ("For the purposes of deciding this motion, the Court accepts as true all facts in Plaintiff's complaint and opposition papers."); Flores v. N.Y.C. Human Res. Admin., No. 10 Civ. 2407, 2011 WL 3611340, at *1 n. 1

(S.D.N.Y. Aug. 16, 2011) ("Because of [plaintiff's] pro se status, . . . the Court may consider factual allegations [plaintiff] makes in her opposition papers, in addition to the allegations in the complaint [.]"); Burgess v. Goord, No. 98 Civ. 2077 (SAS), 1999 WL 33458, at *1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (citation omitted).

### 1. **Nazon's employment with TEI**

Nazon is "a gay Haitian black man" who was born in 1954. (ECF No. 13 at 11–12). TEI is a real estate investment company in New York. (Id. at 2 ¶ 8). On April 9, 1996, TEI hired Nazon as an Office Administrator. (Id. at 2 ¶¶ 10–11). In this role, Nazon reported directly to TEI's Office Manager, and his responsibilities "consisted of assisting [TEI's] General Counsel, Philip Brody ["Brody"], maintaining the filing room, preparing closing binder and closing materials, filing and copying needs for other staff members[,] . . . mailroom duties/coverage, banking deposits, petty cash and front desk responsibilities when needed." (Id. at 2 ¶ 11). Nazon alleges that, throughout his tenure at TEI, he was also directed to perform various tasks "that should be handled by the super[,]" such as "[w]hen the garbage disposal ha[d] a problem" or "the bathroom [was] congested." (Id. at 5 ¶ 34). Nazon "executed [these tasks] without complaining." (Id.)

### a. **April 2003 to April 2015**

On April 11, 2003, Judith Frank, a White Office Manager, "put her hand on [Nazon's] throat to 'demonstrate' her anger towards" the son of TEI's president, Robert Kantor ("Kantor"). (ECF No. 13 at 3 ¶¶ 13–14 (the "2003 Frank Incident")). Nazon reported the 2003 Frank Incident

to Kantor and Brody.  (Id. at 3 ¶ 13).  Brody told Nazon he was "being too sensitive[.]"  (Id.)  As a result of the 2003 Frank Incident, Nazon began experiencing nightmares, and Roberta Axelrod ("Axelrod"), TEI's "Vice President Director of Sales and Rental[,] suggested [he] go see a therapist."  (Id. at 3 ¶ 15).  In September 2003, Nazon began attending therapy, but stopped after nine sessions because he could no longer afford it.  (Id. at 3 ¶ 16).  Nazon alleges that, eight years later, on November 21, 2011, "Kantor ridiculed [him] for going to therapy after he was attacked by Judith Frank."  (Id. at 5 ¶ 33).

Later in 2003, Nazon began "showing apartments on behalf of the Sales and Rental department on Saturdays and Sundays[.]"  (ECF No. 13 at 3 ¶ 17).  In November 2003, Nazon obtained his broker's license "with hopes of becoming more of an asset" to TEI, but "was no longer asked by the Sales and Rental department to show any future apartments."  (Id. at 3 ¶ 19).

In May 2006, Nazon qualified as an independent broker.  (Id. at 4 ¶ 23).  On October 31, 2006, TEI's CEO, Francis Greenburger, informed Nazon that he had four options: (i) "return the License to [the] Department of State, [(ii)] resign from [TEI], [(iii)] hold the license and never use it[;] or [(iv)] become an Associate Broker" at TEI, which, Nazon alleges, "would not be possible because Ms. Axelrod [would] never . . . approve it."  (Id. at 4 ¶ 24 (the "2006 Greenburger Ultimatum")).  Nazon agreed not to use his license.  (ECF No. 22 at 4).  Nazon alleges that TEI "allowed an 'unlicensed' young white man, Jonathan Dulberg[,] to openly do Real Estate transactions until 2020."  (ECF No. 13 at 13).

On June 26, 2009, Suzi Wilson ("Wilson"), TEI's Director of Commercial Leasing, "showed [Nazon] hostility in the presence of colleagues by putting her hand on his chest and pushing him and screaming 'what the hell, everything has to be such a big deal with you.'"  (ECF No. 13

at 4 ¶ 26 (the "2009 Wilson Incident")).  Nazon reported the incident to Brody, who told Nazon, "don't say anything to [Kantor], nothing happened."  (Id.)  Nazon "did not pursue the matter any further."  (Id.)

On July 26, 2010, Beatrice Aquino ("Aquino"), TEI's "HR/Office Manager," emailed all TEI staff members indicating "We don't condone any physical violence at the workplace." (ECF No. 13 at 4 ¶ 28).  Nazon asked Aquino "if that means 'you will not punch me in the face if I look at you that way' like you said and when you told me 'people like you should not make a certain amount of money."  (Id. (the "2010 Aquino Incident")).  Aquino responded, "I do not remember saying that."  (Id.)

On April 6, 2011, in connection with a planned surgery, "Nazon requested to use the 10 days disability leave that all TEI staff members are given[,]" but "was told that he should use his vacation time that he didn't even accrue yet."  (ECF No. 13 at 4 ¶ 29 (the "2011 Vacation Time Incident")).  Nazon alleges that TEI employee Gerald Noel ("Noel"), "an older Haitian black man," also "was not allowed to use his 10 days disability leave" when he had surgery in November 2012.  (Id.)

October 28, 2011, Nazon reported to Daniel Schwartzman ("Schwartzman"), TEI's counsel at that time, that Kim Murphy ("Murphy"), a "white woman," twice told Nazon that she was "going to kill him" and, on third occasion, said, "I can't wait to kill that f ... Alix Nazon." (ECF No. 13 at 12 (the "2011 Murphy Incident"); see id. at 5 ¶ 32; id. at 30).  Nazon claims he "decided to take her words seriously" because his "food was tampered with[.]"  (Id. at 5 ¶ 32). Kantor "put [Nazon] on probation" and told him to "stay home until [his] fear subside[d]."  (Id. at 5 ¶ 33).

On April 8, 2015, Nazon "found the courage to finally email [] Aquino and [] Kantor regarding his unpaid wages." (ECF No. 13 at 4 ¶ 30 (the "2015 Unpaid Wages Incident")). Nazon stated that "for the past 19 years he ha[d] provided coverage for the mail room during [] Noel's absences each year (2-3 weeks each time)[,]" and that, accounting for "the increase of the cost of living" and the $4,000 TEI had already paid him, TEI owed him "a balance of $14,000[.]" (Id. at 4–5 ¶ 30). In May 2015, "in retaliation" for complaining about his wages, TEI paid Nazon "$2,500 for the past due labor" but decreased his annual bonus from $1,500 to $1,000. (Id. at 5 ¶ 31).

On December 18, 2019, after a mandatory sexual harassment training for TEI employees, Nazon spoke with Marjorie Kaye, Jr. ("Kaye"), an attorney with the firm Jackson Lewis P.C., "about the incident that happened to him at TEI from 2003 to date [sic]." (ECF No. 13 at 5 ¶ 35 (the "December 2019 Complaint"); see ECF No. 10). Kaye suggested that Nazon "talk to Max Sturman, a Counsel at TEI[,] who conducted an investigation." (ECF No. 13 at 5 ¶ 35). Sturman "gave [Nazon] a copy of his investigation." (Id.)

### b. **March 2020 to September 2020**

On March 28, 2020, a student in a school located in the same building as TEI tested positive for COVID-19. (ECF No. 13 at 5 ¶ 37). Nazon and Noel were "designated to sanitize the office[.]" (Id.) They were not given masks, but "masks were given to all the other employees." (Id. (the "2020 Mask Incident")).

On April 3, 2020, Nazon informed TEI that he had tested positive for COVID-19. (ECF No. 13 at 5 ¶ 38). Andrey Harmaty ("Harmaty"), TEI's Office Manager at that time, did not clear Nazon to return to work until June 19, 2020. (Id. at 5–6 ¶ 38) Nazon alleges that Noel was

similarly "quarantined for three months" after his wife tested positive for COVID-19. (Id. at 6 ¶ 38)  When Nazon and Noel returned to work, they learned that "their vacation time was used to cover the quarantine time[,]" even though Nazon continued to "work[] from him like all the other employees" during this time.  (Id. (the "2020 Vacation Time Incident"))

In June 2020, "[f]or the reopening of the company, welcome back bags" containing hand sanitizer, a mask, gloves, and a cookie were given to all employees except Nazon and Noel. (ECF No. 13 at 6 ¶ 39 (the "2020 Welcome Back Bag Incident")).  Noel told Harmaty and Natalie Diaz ("Diaz"), TEI's "Officer of Staff" (id. at 5 ¶ 36), that this "was discrimination[.]"  (Id. at 6 ¶ 39).  Harmaty and Diaz told Noel that his claim was "disrespectful[.]"  (Id.)

On June 12, 2020, Nazon emailed Diaz regarding Greenburger's "opening statement" to TEI employees that "we will not tolerate injustice and discrimination in the company." (ECF Nos. 13 at 6 ¶ 40; 22 at 63).  Nazon asked Diaz if Greenburger knew:

> that [Kantor] put me in [sic] probation when I brought to [Schwartzman]'s attention that [Murphy] said she is going to kill me for the third time after she tempered [sic] with my and other people's food?  Does he know that [] Wilson pushed me in front of three co-workers for no reason so she could look tough? Does he remember that he ask[ed] me to sign an options agreement stated [sic] not to use my broker license[?]

(ECF No. 22 at 63 (the "June 2020 Complaint"); see ECF No. 13 at 6 ¶ 40).  Nazon told Diaz that, if he had accepted Greenburger's option to keep his license and resign from TEI, he "would have had enough money to pay a private doctor to visit [his] mom the night April 3rd instead of taking her to the hospital where they automatically diagnose her as corvid [sic] without much examination."  (ECF No. 22 at 63).  Nazon told Diaz that his mother, who died on April 8, 2020,

"would have been alive today[.]"  (Id.; see ECF No. 13 at 13).[2]  Diaz  told Nazon that "she was going to talk to the new broker of record, Richard Recny, about [Nazon's] Broker license[,]" but Nazon "was never give[n] an answer."  (ECF No. 13 at 6 ¶ 40).

On  September  25,  2020,  Zabrina  Mathew  ("Mathew"),  a  "Receptionist/Office Administrator,  stated  'I  truly  hate  this  guy[.]'"  (ECF No. 13 at 6 ¶ 42 (the "2020 Mathew Incident")).  Nazon "immediately requested a meeting with [] Harmaty to clear the incident."  (Id.) Harmaty  met  with  Nazon  and  Mathew  that  same  day.  (Id.; see ECF No. 22 at 103–04). On September 27, 2020, Nazon obtained "a copy of the recording camera which show[ed] that [Harmaty] met [Mathew] at the front desk for preparation of the meeting" and that two other TEI employees told Harmaty that they heard Mathew say that Nazon "is lazy."  (ECF Nos. 13 at 6 ¶ 43; 22 at 103–04).

### c.  The October 2020 Incident

On October 15, 2020, Nazon sent a "simple suggestion letter to management" regarding "cleaning protocols."  (ECF Nos. 13 at 6 ¶ 44; 22 at 39, 44).  Specifically, Nazon sent several TEI employees an email with the subject line "A Suggestion" that read:

> Yesterday I ran to the lady in the men's room who is doing sanitation told me to wait until she finish.
>
> Politely I waited until she was done.
>
> When she walked out she pointed the sign that was posted in front of the door.
>
> If that happen to me it could happen to others

---

[2] In his Amended Complaint, Nazon alleges that his mother died in April 2021.  (ECF No. 13 at 13).  Given Nazon's other allegations and exhibits suggesting his mother died in April 2020 (see, e.g., id. at 5 ¶ 36; ECF No. 22 at 63) and that he resigned from TEI in October 2020 (see ECF No. 13 at 6 ¶ 46; see also § II.A.2, infra), the Court assumes this was a typographical error.

I think she should have been be [sic] the one to step out until it's vacant.

It's a team of two who are sanitizing the Building a man and a woman.

I think to avoid that incident the man should do the men's room and the lady do the ladies room.

When a person got to go they got to go.

Best way to spell relief is PISS[.]

(ECF No. 22 at 44 (the "Email")).

The exhibits annexed to Nazon's Opposition reflect that, on October 23, 2020, Harmaty met with Nazon to discuss an alleged incident on October 15, 2020 between Nazon and Melanie Moran, the cleaning attendant Nazon referenced in the Email (the "October 2020 Incident"). (ECF No. 22 at 2, 36, 38, 42).  According to Harmaty, Moran, accompanied by Mathew, came to Harmaty's office "crying" and "extremely distraught."  (Id. at 42; see id. at 2).  In an email Harmaty sent to Nazon's personnel file on October 27, 2020, he summarized Moran's description of the October 2020 Incident as follows:

> [Moran] stated that [Nazon] entered her staging area where she prepares herself and berated her with regard to the way she managed the cleaning of the men's bathroom on the 15th floor in front of Hopeton [Bryant ("Bryant"), another TEI employee]. She was quite upset and cried for about twenty minutes as she tried to speak. [Mathew] was present. She stated that the day before, she was cleaning the men's bathroom with clearly visible signage that she was doing so on the exterior. Having seen [Nazon] ignore the sign and walk in, [Moran] stated that she told him that she would be done in a minute. She claimed that [Nazon] appeared upset and left. The following day he entered her staging area (the mechanical room on the 15th floor) waving his finger at her scolding her over the fact that she did not leave the bathroom and allowed him to use the facilities after which she could resume her work. She felt demeaned, disrespected and overall very upset.

(ECF No. 22 at 42).  Harmaty's summary also reflects that, after speaking with Moran, he met with Bryant, who "confirmed that while he did not see what precipitated the [October 2020 Incident], he witnessed the altercation, and described the event identically as was described by

[Moran]." (Id.)  At the October 23 meeting, Nazon also "described the incident similar to that of [Moran] and [Bryant] except for his level of aggression." (Id. at 43).

On October 27, 2020, Harmaty issued a warning (the "Warning") to Nazon because of the October 2020 Incident.  (ECF Nos. 13 at 6 ¶ 45; 22 at 32, 42).  Harmaty stated that, "[b]ecause a witness corroborated the behavior that [Nazon] expressed to [Moran] in her complaint, [Harmaty was] left no choice but to issue a warning to [Nazon]." (ECF No. 22 at 43).  Harmaty indicated that "[a]ny repeat of this behave [sic] could lead to potential disciplinary action up to and including termination." (Id.)

### 2.  Nazon's Resignation

On October 31, 2020, Nazon resigned from TEI.  (ECF No. 13 at 6 ¶ 46 (the "Resignation")). That day, Nazon "sent [a] detailed resignation email to [] Greenburger, [] Kantor and [] Aquino" (the "Resignation Email") and "a farewell email to all [TEI employees] explaining the reason he had to make such a hard decision" (the "Farewell Email").  (Id.; see ECF No. 22 at 40–41)).  In the Resignation Email, Nazon wrote that Harmaty "conducted a conspiracy investigation" of the October 2020 Incident.  (ECF No. 22 at 40).  Nazon said that he "could have walked away from [TEI] many years ago, but with each incident [he] kept hoping for CHANGE which never came[,]" recounting the 2003 Frank Incident, 2006 Greenburger Ultimatum, 2009 Wilson Incident, 2010 Aquino Incident, and 2011 Murphy Incident.  (Id.)  In the Farewell Email, Nazon wrote that "'Equality' Requires effort and non-bias in greater leaders." (Id. at 41).  He again referred to the "conspiracy investigation conducted by [Harmaty]" and said he was "never given a fair chance to defend myself other than admit to the charges and apologize[.]" (Id.)  Nazon said that he

"proudly decided to take the high road" and resigned "so there could never be and other [sic] investigation leading to a new charge." (Id.)

Nazon alleges that, also on October 31, 2020, "Noel resigned because of discrimination because his blood pressure raised very high and he had to be hospitalized to bring it down during the pandemic due to the demand [] Harmaty made from him." (ECF No. 13 at 7 ¶ 47).

## B. **Procedural Background**

On November 10, 2020, Nazon filed a charge of discrimination against TEI with the U.S. Equal Employment Opportunity Commission ("EEOC"). (ECF No. 13 at 15).[3] On September 23, 2021, the EEOC dismissed Nazon's charge without determining "whether further investigation would establish violations" of federal law, and advised Nazon of his right to file a lawsuit. (ECF No. 1 at 8).

On October 22, 2021, Nazon filed the Complaint. (ECF No. 1). On November 10, 2021, TEI advised the Court that it intended to move to dismiss the Complaint, and requested a conference. (ECF No. 7). That same day, the Honorable Analisa Torres referred TEI's anticipated motion for a report and recommendation. (ECF No. 9). On December 2, 2021, the Court held a conference, at which it granted Nazon leave to amend his Complaint by January 7, 2022. (ECF No. 12; see ECF min. entry Dec. 2, 2021). On January 5, 2022, Nazon filed the Amended Complaint. (ECF No. 13). On January 19, 2022, TEI advised the Court that it intended to file the Motion. (ECF No. 14). On January 25, 2022, Judge Torres referred the anticipated Motion for a report and recommendation. (ECF No. 16).

---

[3] Nazon alleges that he filed his EEOC charge on November 10, 2021. (ECF No. 13 at 15). Given, however, that this post-dates the EEOC's dismissal of his charge (see ECF No. 1 at 8) and that TEI does not argue that Nazon failed to timely file his EEOC charge, the Court assumes Nazon meant 2020.

On March 3, 2022, TEI filed the Motion.  (ECF No. 19).  On March 24, 2022, Nazon filed this Opposition (ECF No. 22) and, on April 7, 2022, TEI filed a reply.  (ECF No. 23 (the "Reply")).

### III.   LEGAL STANDARDS

#### A.   Motion to Dismiss

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the plaintiff.  See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119 (2d Cir. 2013); Trujillo v. City of New York, No. 14 Civ. 8501 (PGG), 2016 WL 10703308, at *4 (S.D.N.Y. Mar. 29, 2016).  The "court must assess whether the complaint 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Sequoia Healthcare Servs., LLC v. Essex Cap. Corp., 763 F. App'x 13, 15 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted)).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; see Myers v. City of New York, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *2 (S.D.N.Y. Aug. 29, 2012).

"'[A] plaintiff alleging employment discrimination or retaliation is not required to plead facts sufficient to establish a prima facie case.'"  Trujillo, 2016 WL 10703308, at *4 (quoting Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010)).  Rather, "the 'ordinary rules for assessing the sufficiency of a complaint' under Fed. R. Civ. P. 8(a)'s notice pleading standard apply."  Id. (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002)).  Under Rule 8(a), a plaintiff must set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a),

"with sufficient factual 'heft to sho[w] that the pleader is intitled to relief.'"  Trujillo, 2016 WL 10703308, at *4 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (internal citation omitted)).  "To survive a motion to dismiss, plaintiff's '[f]actual allegations must be enough to raise a right of relief above the speculative level,' . . . and present claims that are 'plausible on [their] face.'"  Id. (quoting Twombly, 550 U.S. at 555, 570)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  A complaint that pleads facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief."  Twombly, 550 U.S. at 557 (internal citation omitted).  If "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," id. at 558, or if the plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  The Second Circuit has explained that, where a complaint "consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a Court could find a violation of the Civil Rights Act, fails to state a claim under [Rule] 12(b)(6)."  Martin v. N.Y. State. Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978).

In reviewing the Motion, the Court considers "the allegations contained within the four corners of the" Amended Complaint, Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), and may consider "documents attached . . . as exhibits, and documents incorporated by reference." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).  The Court may also consider a document that, although not incorporated by reference, the Amended Complaint relies on for its terms such that the document is "integral to the complaint."  Id.

### B.  Pro Se Considerations

In deciding a motion to dismiss, "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation and citation omitted). Nonetheless, "a pro se plaintiff must still plead enough facts to state a claim to relief that is plausible on its face." Gottesfeld v. Anderson, No. 18 Civ. 10836 (PGG), 2020 WL 1082590, at *5 (S.D.N.Y. Mar. 6, 2020).  Despite the Court's obligation "to draw the most favorable inferences" from a complaint, it "cannot invent factual allegations that [the plaintiff] has not pled." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "The Court need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.'" Tsinberg v. City of New York, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021) (quoting Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005)).

### IV.   DISCUSSION

Nazon alleges discrimination, hostile work environment, and retaliation claims under Title VII, the ADEA, the ADA, Section 1981, the NYSHRL, and the NYCHRL.  (ECF No. 13).  TEI seeks dismissal of all claims.  (ECF No. 19).

Before addressing the plausibility of Nazon's claims, the Court first addresses the threshold issue of whether any of his claims are time-barred.

### A.  Time-Barred Claims

TEI argues that Nazon's claims are time-barred "to the extent they are predicated on acts alleged to have taken place prior to 2017[.]"  (ECF No. 20 at (capitalization omitted)).  In support

of this argument, TEI relies on "the most lenient" limitations period applicable to Nazon's claims, i.e., "the four years allowed under § 1981[.]"  (Id.)

In his Opposition, Nazon argues that his "claims are not time barred because it was an ongoing situation over the span of 20 years which ended on October 31, 2020 when [Nazon] decided enough was enough and resigned."  (ECF No. 22 at 3; see id. at 2 ("This abuse and harassment started twenty years ago and has escalated to the point that [Nazon] had no other choice than to resign for fear of being subjected to additional undue harassment.")).  In its Reply, TEI argues that Nazon's invocation of the "continuing violation" exception is legally deficient because "there is a significant temporal gap between allegations made inside and outside the state of limitations" and because Nazon "asserts allegations of discriminatory misconduct against different supervisors in different departments."  (ECF No. 23 at 5–7 (capitalization omitted)).

### 1.  Applicable Statutes of Limitations

#### a.  Title VII, ADEA, and ADA Claims

To pursue claims under Title VII, the ADEA, and the ADA, a plaintiff must file a discrimination charge with the EEOC, or a state or local agency capable of granting relief from discriminatory practices, within 300 days of the alleged discriminatory action.  See 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); 29 U.S.C. §§ 626(d)(1)(B), 633(b); Espinosa v. Weill Cornell Med. Coll., No. 18 Civ. 11665 (AT), 2021 WL 1062592, at *3 (S.D.N.Y. Mar. 19, 2021); Rosen v. N.Y.C. Dep't of Educ., No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *3 (S.D.N.Y. Aug. 27, 2019).  "Under the ADA, Title VII, and the ADEA, a plaintiff must [then] file an action in federal court within 90 days of receipt of a right-to-sue letter from the EEOC."  Henriquez-Ford v. Council of Sch. Sup'rs &

Adm'rs, No. 14 Civ. 2496 JPO, 2015 WL 3867565, at *5 (S.D.N.Y. June 23, 2015) (citing 42 U.S.C. § 2000e-5(f)(1)); see 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e).

### b. Section 1981 Claim

"Claims arising under § 1981 are generally governed by a four-year statute of limitations, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 383 (2004), although certain § 1981 claims in New York have a three-year limitations period, see Wright v. City of Ithaca, 633 F. App'x 63, 64 (2d Cir. 2016)." Toussaint v. City of New York, No. 19 Civ. 1239 (AT), 2020 WL 3978317, at *3 (S.D.N.Y. June 29, 2020), reconsideration denied, 2020 WL 3975472 (S.D.N.Y. July 14, 2020). TEI presumes that a four-year statute of limitations applies to Nazon's Section 1981 claim. (See ECF No. 20 at 12).

### c. NYSHRL and NYCHRL Claims

Nazon's claims under the NYSHRL and the NYCHRL are subject to a three-year statute of limitations. See N.Y. Civ. Prac. L. & R. § 214(2); N.Y.C. Admin. Code § 8-502(d); Kassner v. 2d Ave. Delicatessen Inc., 496 F.3d 229, 238 (2d Cir. 2007); Espinosa, 2021 WL 1062592, at *4.

### 2. Continuing Violation Doctrine

"Although discrete incidents of discrimination that are not the result of a discriminatory policy or practice will not ordinarily amount to a continuing violation, 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found." Espinosa, 2021 WL 1062592, at *3 (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994)). "If a plaintiff shows a continuing violation occurred, [he] is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice,

including those that would otherwise be time barred." Id. (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996)). Under the continuing-violation exception, "if a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir. 2001) (internal citations omitted). "[T]he doctrine 'is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.'" Doe v. State Univ. of New York Purchase Coll., No. 21 Civ. 8417 (KMK), 2022 WL 2972200, at *9 (S.D.N.Y. July 27, 2022) (quoting Weslowski v. Zugibe, 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014)).

For the continuing violation exception to apply, "a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004). The Supreme Court has explained that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113–15 (2002). "Instead, '[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act,' and even serial violations—a series of discrete but related acts of discrimination—do not warrant application of the continuing violations doctrine." Milani v. IBM, 322 F. Supp. 2d 434, 452 (S.D.N.Y. 2004) (quoting Morgan, 536 U.S. at 113–14). The Supreme Court's holding in Morgan also supplies the standard for applying the continuing-violations exception to NYSHRL and NYCHRL claims. See Bermudez v. City of New York, 783 F. Supp. 2d 560, 574 (S.D.N.Y. 2011) (citing Bartman v. Shenker, 5 Misc. 3d 856 (N.Y. Sup. Ct. 2004)).

"The continuing violation doctrine has often been found applicable to hostile-work-environment claims." Alvarado v. Mount Pleasant Cottage Sch. Dist., 404 F. Supp. 3d 763, 779 (S.D.N.Y. 2019). "A hostile work environment claim, unlike a discrete employment action, will be treated as a continuing violation where the claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice." Taylor v. City of New York, 207 F. Supp. 3d 293, 309 (S.D.N.Y. 2016) (citations omitted). "[T]o be part of the same actionable hostile-work-environment practice, the timely offensive incident must be 'sufficiently related' to incidents outside of the limitations period." Alvarado, 404 F. Supp. 3d at 779 (quoting Taylor, 207 F. Supp. 3d at 309).

### 3. Application

Nazon commenced this action on October 22, 2021. (ECF No. 1). Accordingly, his claims based on conduct that occurred more than four years before that date, i.e., October 22, 2017, are time-barred unless the continuing violation exception to the statute of limitations applies.[4]

The Court finds that Nazon's claims based on conduct occurring before October 22, 2017 are untimely. Specifically, Nazon's complaints of discriminatory treatment before that date—which include the: (i) 2003 Frank Incident, (ii) 2006 Greenburger Ultimatum, (iii) 2009 Wilson Incident, (iv) 2010 Aquino Incident, (v) 2011 Vacation Time Incident, (vi) 2011 Murphy Incident, and (vii) 2015 Unpaid Wages Incident (ECF No. 13 at 3–5, 12)—do not amount to an ongoing and systematic scheme of discrimination by TEI but rather are "[d]iscrete acts" that occurred outside

---

[4] Although a shorter statute of limitations applies to Nazon's Title VII, ADEA, ADA, NYSHRL, and NYCHRL claims (see § IV.A.1 supra), TEI argues only for the application of the four-year limitations period applicable to Nazon's Section 1981. (See ECF No. 20 at 1–12). Accordingly, the Court need not address whether Nazon's other allegations are time-barred by these shorter limitations periods.

the statutory time period and, therefore, the continuing violation doctrine does not apply.

Morgan, 536 U.S. at 114.  As TEI correctly argues, this conduct took place over a span of fourteen

years, with most incidents occurring several years apart, including a nearly five-year gap between

the most recent conduct outside the limitations period (the 2015 Unpaid Wages Incident) and

the first conduct within the limitations period (the 2020 Mask Incident).  (See ECF No. 13 at 4–5,

¶¶ 30, 37).  As a result, "these alleged acts are sufficiently isolated in time (usually from each

other, and at least from the timely allegations) as to break the asserted continuum of

discrimination."  Anderson v. N.Y.C. Dep't of Fin., No. 19 Civ. 7971 (RA), 2020 WL 1922624, at *4

(S.D.N.Y. Apr. 21, 2020) (citation omitted).

Further, "[a]s to nearly every incident, [Nazon] alleges that a different manager or co-

worker was the source of the discrimination."  Anderson v. N.Y.C. Dep't of Fin., 2020 WL 1922624,

at *4 (finding continuing violation doctrine did not apply to allegations that spanned thirteen

years, where plaintiff worked in various departments, and where different managers or co-

workers were the source of each instance of discrimination).  In addition, as discussed below,

Nazon fails to allege that any TEI employee took any action because of Nazon's protected

classifications, (see §§ IV.B.2, C.2, D.2), much less that his timely and untimely allegations are

sufficiently related to constitute a discriminatory policy or practice.  "The Court therefore cannot

find that [Nazon's allegations] are sufficiently related to constitute a continuing violation."

Taylor, 207 F. Supp. 3d at 309–10 (finding continuing violation doctrine did not apply where "[t]he

timely allegations . . . relate[d] to incidents allegedly perpetrated by other employees six or more

years later"); see Panchishnak v. Cnty of Rockland, No. 20 Civ. 10095 (KMK), 2021 WL 4429840,

at *4 (S.D.N.Y. Sept. 27, 2021) (finding continuing violation doctrine did not apply to hostile work

environment claim where the plaintiff's untimely allegations had "no plausible connection to" the timely allegations, "as the incidents involve[d] two different employees and wholly unrelated conduct over a decade apart"); <u>Alvarado</u>, 404 F. Supp. 3d at 779 (finding continuing violation doctrine did not apply to sex-based hostile work environment claims where the plaintiff alleged "drastically different types of discriminatory conduct" and failed to allege that her untimely and "wholly distinct" sex-based claims were sufficiently related to her timely race/national-origin based claims); <u>Anderson v. Davis Polk & Wardwell LLP</u>, 850 F. Supp. 2d 392, 406 (S.D.N.Y. 2012) (finding continuing violation doctrine did not apply where "earlier episodes [were] plainly unrelated because they involve[d] wholly different employees"); <u>Zabar v. N.Y.C. Dep't of Educ.</u>, No. 18 Civ. 6657 (PGG), 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (granting motion to dismiss as to employment actions that took place outside the statute of limitations period); <u>Concey v. N.Y.S. Unified Ct. Sys.</u>, No. 09 Civ. 8858 (PGG), 2011 WL 4549386, at *13 (S.D.N.Y. Sept. 30, 2011) (finding that allegedly discriminatory remarks and failure to promote that occurred outside the statute of limitations period were "discrete acts" that were time-barred).  Nazon may only base his claims on conduct that occurred <u>after</u> October 22, 2017.  <u>See</u> <u>Silva-Markus v. N.Y.C. Dep't of Educ.</u>, No. 19 Civ. 4335 (PGG), 2020 WL 5819555, at *6 (S.D.N.Y. Sept. 30, 2020) (granting motion to dismiss to the extent that claims were based on employment actions that occurred outside the statute of limitations period); <u>Bermudez</u>, 783 F. Supp. 2d at 585 (holding that continuing violation exception did not apply to discrimination claims and excluding allegations outside the statute of limitations period).

Accordingly, the Court respectfully recommends that Nazon's allegations relating to conduct occurring more than four years before he filed the Complaint, i.e., before October 22, 2017, be deemed time-barred.

**B.   Discrimination Claims**

Nazon alleges that Defendants subjected him to different terms and conditions of employment because of his (i) race, sex, and national origin (the "Title VII and 1981 Discrimination Claims"), (ii) disability (the "ADA Discrimination Claim"), and (iii) age (the "ADEA Discrimination Claim"). (ECF No. 13 at 1, 10, 11). TEI argues that each of Nazon's discrimination claims fails as a matter of law. (ECF No. 23 at 20–25). For the reasons set forth below, the Court agrees with TEI and finds that Nazon has failed to plausibly allege that TEI discriminated against him based on any protected category.

**1.   Legal Standards**

The Court analyzes Nazon's Title VII, ADEA, ADA and NYSHRL discrimination claims under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Floyd v. N.Y.C. Dep't of Educ., No. 10 CIV. 8951, 2014 WL 171156, at *8 (S.D.N.Y. Jan. 13, 2014) ("This burden-shifting framework applies to claims under the ADA [and] NYSHRL . . . ."); Dabney v. Christmas Tree Shops, 958 F. Supp. 2d 439, 450 n.11 (S.D.N.Y. 2013) (addressing discrimination claims based on race, gender, and age together under the McDonnell Douglas standard until the "final stage" of the ADEA analysis) (citing Dixon v. Int'l Fed'n of Acct., 416 F. App'x 107, 109 (2d Cir. 2011) ("All of [plaintiff's] discrimination claims are analyzed under the three-step burden shifting framework from McDonnell Douglas . . . ."). Likewise, Section 1981 and NYCHRL discrimination claims are "generally analyzed" under this same framework. Barbosa

v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 217 (S.D.N.Y. 2010); see Pachecho v. N.Y. Presbyterian Hosp., 593 F. Supp. 2d 599, 629 (S.D.N.Y. 2009) (analyzing Section 1981 claims under the McDonnell Douglas framework and determining that the inability to establish a Title VII claim was "equally fatal" to the Section 1981 claim); Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 95 (2d Cir. 1999) (analyzing NYSHRL and NYCHRL race discrimination claims under the McDonnell Douglas framework).

"Under this standard, [p]laintiff must show that: (1) [he] is a member of a protected class; (2) [he] was qualified for the position [he] held; (3) [he] suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an inference of discrimination."  Milord-Francois v. N.Y.S. Office of the Medicaid Inspector Gen., No. 19 Civ. 179 (LJL), 2020 WL 5659438, at *10 (S.D.N.Y. Sept. 23, 2020).  "If a plaintiff can meet the initial burden of showing a prima facie case, 'the burden then shifts to the defendant to offer a legitimate nondiscriminatory reason for the [adverse employment action].  If the defendant does so, the burden returns to the plaintiff to show that the real reason for [the adverse employment action] was' her membership in a protected class." Boatright v. U.S. Bancorp, No. 18 Civ. 7293 (LJL), 2020 WL 7388661, at *14 (S.D.N.Y. Dec. 16, 2020) (citing Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491–92 (2d Cir. 2010)).  Although Nazon need not plead a prima facie case of discrimination to survive a motion to dismiss, he "must allege sufficient facts showing that [he] is entitled to relief." Bermudez, 783 F. Supp. 2d at 575.  "[T]he elements of a prima facie case 'provide an outline of what is necessary' to render such claims plausible."  Chalmers v. City of New York, No. 20 Civ. 3389 (AT), 2021 WL 4226181, at *3 (S.D.N.Y. Sept. 16, 2021) (quoting Kassman v. KPMG LLP, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013) (citation omitted)).

Under the ADEA, "the final stage [of the analysis] is different.  The plaintiff must show not only that the defendant discriminated on the basis of age, but also that age discrimination was the 'but-for' cause of the adverse action, and not merely one of the motivating factors."  Dabney, 958 F. Supp. 2d at 451 (citing Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009)); See Yu v. N.Y.C. Hous. Dev. Corp., 494 F. Appx. 122, 124–25 (2d Cir. 2012).  "[A] plaintiff alleging a claim under NYCHRL need only satisfy the 'mixed-motive' standard, whereby the plaintiff need only show that age was 'a motivating factor' in her [adverse employment action]."  Rodriguez v. City of New York, No. 09-CV-1378 KAM RER, 2011 WL 3610751, at *12 (E.D.N.Y. Aug. 16, 2011), aff'd, 484 F. App'x 637 (2d Cir. 2012).  Similarly, in August 2019, "the NYSHRL was amended to 'render the standard for claims closer to the standard under the NYCHRL.'"  Summit v. Equinox Holdings, Inc., No. 20 Civ. 4905 (PAE), 2022 WL 2872273, at *18 (S.D.N.Y. July 21, 2022) (quoting Wellner v. Montefiore Med. Ctr., No. 17 Civ. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019)).  The amendment "applies to claims occurring on or after October 11, 2019, without retroactive effect."  Id.

   2. **Application**

      a. **ADA Discrimination Claim**

TEI argues that Nazon's disability discrimination claim fails because he "alleges no facts suggesting that he was in any way disabled or that any adverse employment action was taken against him because he was disabled or perceived as disabled."  (ECF No. 20 at 22).  Thus, TEI argues that Nazon fails to allege the first, third, and fourth elements of ADA Discrimination

Claim.[5]   In response, Nazon argues that, in April 2011, he "had a surgery and specifically requested to use his disability leave but instead they used vacation time" (i.e., the 2011 Vacation Time Incident).  (ECF No. 22 at 5 ¶ H; see ECF No. 13 at 4 ¶ 29).  He also argues that he "was forbidden to come to the office from April to June [2020]" after he was diagnosed with COVID-19 and that "[t]wenty-nine days of his vacation time were used plus one unpaid day" (i.e., the 2020 Vacation Time Incident).  (ECF No. 22 at 5 ¶ H; see ECF No. 13 at 5 ¶ 38).

As an initial matter, for the reasons discussed above, Nazon's allegations concerning the 2011 Vacation Time Incident are time-barred and cannot support his claim.  (See § IV.A.3 supra), Accordingly, in evaluating Nazon's ADA Discrimination Claim, the Court focuses only on the 2020 Vacation Time Incident.

The Court finds that Nazon fails to plausibly allege a disability discrimination claim based on the 2020 Vacation Time Incident for two reasons.  First, Nazon fails to plausibly allege the first element of a prima facie disability discrimination claim, i.e., that he is disabled or that TEI perceived him as disabled.  Second, while the Court disagrees with TEI's argument that the 2020 Vacation Time Incident does not constitute an adverse employment action, the Court agrees with TEI that Nazon fails to allege this action occurred under circumstances giving rise to an inference of disability discrimination.  The Court explains each issue in turn.

Under the ADA, a plaintiff is disabled if he (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment."  42 U.S.C. § 12102(1).  "With respect to COVID-

---

[5] TEI does not address the second element of Nazon's prima facie discrimination claims, i.e., that he was qualified for his position.

19 in particular, the most recently updated 'Technical Assistance Questions and Answers' from the EEOC provides that 'depending on the specific facts involved in an individual employee's condition, a person with COVID-19 has an actual disability if the person's medical condition or any of its symptoms is a 'physical or mental' impairment that 'substantially limits one or more major life activities.'" Earl v. Good Samaritan Hosp. of Suffern NY, No. 20 Civ. 3119 (NSR), 2022 WL 4087597, at *9 (S.D.N.Y. Sept. 6, 2022) (citing EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws  (last  updated July 12, 2022)).[6]  A "plaintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some "detail the frequency, duration, or severity of [his or her limitations]." Id. (quoting Kelly v. N.Y. State Office of Mental Health, 200 F. Supp. 3d 378, 393 (E.D.N.Y. 2016)).

Here, Nazon alleges no facts regarding the frequency, duration, or severity of any limitations caused by his COVID-19 diagnosis.  (See ECF Nos. 13; 22).  To the contrary, Nazon's own allegations suggest he did not suffer any substantial limitations, as he admits that the only reason he did not return to work was because he "was forbidden" by TEI to do so, (ECF No. 22 at 5 ¶ H), and that he continued to "work[] from home" during this time.  (Id. at 4 ¶ C; see ECF No. 13 at 5–6 ¶ 38).  Accordingly, Nazon has failed to plausibly allege that his COVID-19 diagnosis was a disability under the ADA.

---

[6] As the Court noted in Earl, "[w]hile '[t]he EEOC Guidelines are not administrative regulations promulgated pursuant to formal procedures established by the Congress[,] . . . they do constitute '[t]he administrative interpretation of the Act by the enforcing agency,' and consequently they are 'entitled to great deference.'"  2022 WL 4087597, at *9 (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 430–31 (1975)).

Similarly, Nazon fails to allege that TEI perceived him as disabled based on his COVID-19 infection.  (ECF No. 20 at 22).  While Nazon alleges that he informed TEI on April 3, 2020 that he had tested positive for COVID-19, "mere knowledge of an employee's impairment does not establish that the employer regarded the employee as disabled."  Earl, 2022 WL 4087597, at *11 (finding that "merely alleg[ing] that Defendants knew that he had been infected with COVID-19 [was] insufficient" to suggest that employer regarded the plaintiff as disabled).  Moreover, the Amended Complaint contains no facts from which the Court could reasonably infer that TEI regarded Nazon's COVID-19 infection as "substantially limit[ing] his ability to work, or perform any other major life activity."  Id.  While Nazon alleges that he "was not cleared to come in the building . . . until June 19, 2020[,]" his own allegations show that TEI's offices were closed to all employees during this period due to the COVID-19 pandemic.  (See, e.g., ECF No. 13 at 6 ¶ 39 (referring to "the reopening of the company" in June 2020); id. at 6 ¶ 38 (alleging that he "worked from like all other employees" during "the quarantine")).  Accordingly, because Nazon has not plausibly alleged that he is disabled, or that TEI perceived him as disabled, he cannot maintain a disability discrimination claim as a matter of law.

As to the third element of Nazon's prima facie disability discrimination claim, the Court disagrees with TEI's argument that the 2020 Vacation Time Incident does not constitute an adverse employment action under the ADA.  (ECF Nos. 20 at 22; 23 at 8).  "A plaintiff sustains an adverse employment action if [he] endures a 'materially adverse change' in the terms and conditions of employment."  Trachtenberg v. Dep't of Educ. of City of New York, 937 F. Supp. 2d 460, 467 (S.D.N.Y. 2013) (quoting Malcolm v. Honeoye Falls Lima Cent Sch. Dist., 483 F. App'x. 660, 662 (2d Cir. 2012)).  A materially adverse change is one that is "more disruptive than a mere

inconvenience or an alteration of job responsibilities." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (internal citation omitted).  Examples of materially adverse changes include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

"[T]he loss of vacation days alone does constitute a 'material loss of benefits,' which in itself can satisfy the third prong's requirement." Beharry v. City of New York, No. 18 Civ. 2042 (AJN), 2020 WL 6135147, at *9 (S.D.N.Y. Oct. 19, 2020) (quoting Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)).  "In other contexts," however, "courts in the Second Circuit have held that 'denial of vacation time' or 'loss of vacation days' do not constitute adverse employment actions." Id. (citing Drouillard v. Sprint/United Mgmt. Co., 375 F. Supp. 3d 245, 272 (E.D.N.Y. 2019)).  "[T]here is no categorical rule indicating that this must always be the case." Id.  Rather, these "inquiries are context-specific." Id.

Here, Nazon alleges that TEI improperly applied his accrued vacation days "to cover the quarantine time . . . even though [he] worked from home like all the other employees." (ECF No. 13 at 6 ¶ 38; see ECF No. 22 at 4–5, 15–16).  TEI's argument that, as a matter of law, this does not constitute an adverse employment is contrary to the law in this Circuit.  (ECF Nos. 20 at 22–23; 23 at 8); see Beharry, 2020 WL 6135147, at *9.  Accordingly, given its obligation to construe Nazon's allegations liberally, the Court finds that he has plausibly alleged TEI's improper deduction of his accrued vacation days constituted an adverse employment action. See Triestman, 470 F.3d at 474 ("[T]he submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.").

While the 2020 Vacation Time Incident constituted an adverse employment action under the ADA, however, the Court agrees with TEI that Nazon fails to allege that this incident occurred under circumstances suggesting disability discrimination.  (ECF No. 20 at 22–23).  "An ADA plaintiff must allege 'that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.'" Perez v. N.Y.C. Dep't of Educ., No. 15 Civ. 7156 (PAE), 2017 WL 4129637, at *3 (S.D.N.Y. Sept. 15, 2017) (quoting Osby v. City of New York, 633 Fed App'x 12, 13 (2d Cir. 2016) (internal citation omitted)).  Here, as TEI correctly argues (ECF No. 20 at 22–23), neither the Amended Complaint nor the Opposition contains any allegations plausibly suggesting that TEI improperly deducted Nazon's accrued vacation days because of any alleged disability.  (See ECF Nos. 13; 22). As previously discussed, Nazon has not plausibly alleged that TEI knew or perceived him to have a disability, much less that it took any action because of one.  Accordingly, Nazon's ADA claim fails as a matter of law.  See Perez, 2017 WL 4129637, at *3 (dismissing ADA claim where the plaintiff's "Amended Complaint [did] not plausibly allege that any adverse employment action [the employer] took against him . . . was taken, at least in part, because of any disability [the plaintiff] has").

For these reasons, the Court respectfully recommends that Nazon's ADA Discrimination Claim be DISMISSED.[7]

---

[7] The Court notes that "the NYSHRL provides broader protection than the ADA, and the NYCHRL is broader still."  Pagan v. Morrisania Neighborhood Fam. Health Ctr., No. 12 Civ. 9047 WHP, 2014 WL 464787, at *6 (S.D.N.Y. Jan. 22, 2014).  Accordingly, if the District Court finds that Nazon has plausibly alleged a disability discrimination under the ADA, then "he has also pleaded claims under the NYSHRL and NYCHRL."  Id.

### b.  **ADEA Discrimination Claim**

TEI argues that Nazon's age discrimination claim under the ADEA fails because his Amended Complaint "contains no mention of his age playing any role in decisions made by [TEI], let alone a sufficient pleading establishing that his age was the 'but-for' cause of an adverse employment action."  (ECF No. 20 at 21).  Nazon does not specifically respond to this argument in his Opposition.  (See ECF No. 22).

The ADEA provides that "[i]t shall be unlawful for an employer—(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a).  "[A]t the pleadings stage, a plaintiff asserting a discrimination claim under the ADEA must allege two elements: '(1) the employer discriminated against him (2) because of his . . . [age].'"  Pfizenmayer v. Hicksville Pub. Sch., No. 15-CV-6987 (SJF) (SIL), 2017 WL 5468319, at *7 (E.D.N.Y. Jan. 24, 2017) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015)). "As to the second element, for purposes of an ADEA discrimination claim, an action is 'because of' a plaintiff's age when 'age was the 'but-for' cause of the employer's adverse action.'"  Id. (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)). "A plaintiff must supply sufficient factual material, and not just legal conclusions, to push the misconduct alleged in the pleading beyond the realm of the 'conceivable' to the 'plausible.'" Marcus v. Leviton Mfg. Co., Inc., 661 F. App'x 29, 32 (2d Cir. 2016) (citing Vega, 801 F.3d at 84).

The Court finds that Nazon has failed to plausibly allege that his age was the but-for cause of any of TEI's actions.  Aside from checking the ADEA box on a form that the Court provides to assist pro se litigants in employment discrimination cases, (ECF No. 13 at 11), Nazon's Amended

Complaint contains no allegations to suggest his age played <u>any</u> role in any of TEI's decisions about his employment, much less that it was the but-for reason.  As a result, Nazon's age discrimination claim under the ADEA fails as a matter of law.  <u>See</u> <u>McCalman v. Partners in Care</u>, No. 01 Civ. 5844 (FM), 2003 WL 22251334, at *5 (S.D.N.Y. Sept. 30, 2003) ("Apart from that check mark, however, [plaintiff]'s amended complaint does not contain any allegations which would support her claim.").

Accordingly, the Court respectfully recommends that Nazon's ADEA Discrimination Claim be DISMISSED.

### c.   <u>Title VII and Section 1981 Discrimination Claims</u>

TEI argues that Nazon's race, sex, and national origin discrimination claims fail because: (i) he fails to plausibly allege that he suffered an adverse employment action and, specifically, that that Nazon's resignation did not constitute a constructive discharge; and (ii) in any event, he fails to allege that such action occurred under circumstances giving rise to an inference of discrimination.  (ECF No. 20 at 15–17, 23–25).  The Court addresses each argument.

### i.   <u>Adverse employment action</u>

As discussed above, an "'adverse employment action' is defined as a 'materially adverse change' in the terms and conditions of employment, which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  <u>Glascoe v. Solomon</u>, No. 18 Civ. 8284 (AT), 2020 WL 1272120, at *6 (S.D.N.Y. Mar. 17, 2020) (quoting <u>Sanders v. N.Y.C Human Resources Admin.</u>, 361 F.3d 749, 755 (2d Cir. 2004)).  "Examples include 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . .

unique to a particular situation.'" Id. (citing Sanders, 361 F.3d at 755).  "The Supreme Court has explained that an adverse action must be materially adverse, and that 'normally petty slights, minor annoyances, and simple lack of good manners' will not rise to the level of an adverse action."  Garcia v. NYC Health & Hosps. Corp., No. 19 Civ. 997, 2019 WL 6878729, at *8 (S.D.N.Y. Dec. 17, 2019) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

The Court has already determined that the 2020 Vacation Time Incident constituted an adverse employment action.  (See § IV.B.2.a supra).  Accordingly, the Court focuses here on Nazon's other timely allegations, i.e., (i) the 2020 Mask Incident, (ii) the 2020 Welcome Back Bag Incident, (iii) the 2020 Mathew Incident, (iv) the Warning, and (v) his Resignation.

The Court agrees with TEI that, as a matter of law, none of these other incidents constitute an adverse employment action.  With respect to the 2020 Mask Incident, 2020 Welcome Back Bag Incident, and 2020 Mathew Incident, these allegations "are insufficient to constitute an actionable change in the terms and conditions of employment and are more in the nature of petty slights."  Collymore v. City of New York, 767 F. App'x 42, 45 (2d Cir. 2019) (affirming dismissal under Fed. R. Civ. P. 12(b)(6) of discrimination claim where the plaintiff alleged her employer mistreated her "by yelling at her and scrutinizing her work more closely than white employees' work, by paying her at a comparable rate to a similarly situated white woman in the department despite [her] superior education and experience, and by chastising her for making overtime requests or denying them altogether.");  see Shultz v. Congregation Shearith Israel of N.Y., 867 F.3d 298, 308–09 (2d Cir. 2017) (rejecting claim of discrimination based on a "handful of uncomfortable incidents," such as plaintiff overhearing supervisor's negative comments and members of management refusing to speak with plaintiff).

Similarly, as a matter of law, Nazon's receipt of the Warning, which was merely verbal and did not result in any further consequences, does not amount to an adverse employment action. See Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007) ("[O]ral and written warnings do not amount to materially adverse conduct in light of [the Second Circuit's] reasoning in Joseph v. Leavitt, 465 F.3d 87, 91 (2d Cir.2006), in which [the Court] stated that '[t]he application of the [employer's] disciplinary policies to [the employee], without more, does not constitute adverse employment action.'"); Johnson v. Rockland Cnty. BOCES, No. 21 Civ. 3375 (KMK), 2022 WL 4538452, at *13 (S.D.N.Y. Sept. 28, 2022) (finding that "a warning would not constitute an adverse employment action, as 'courts in this circuit have found that reprimands, threats of disciplinary action and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation.'") (quoting Young v. Town of Islip, No. 13-CV-4713 (ADS) (ARL), 2017 WL 5468752, at *6 (E.D.N.Y. Nov. 13, 2017)); Bernstein v. N.Y.C. Dep't of Educ., No. 19 Civ. 11816 (LJL), 2021 WL 4429318, at *12 (S.D.N.Y. Sept. 27, 2021) ("As long as there are no adverse follow-on effects, an employer has the right to deliver a disciplinary notice to an employee . . . without subjecting itself to an employment discrimination lawsuit, for the risk of discipline . . . is an ordinary term and condition of employment.").

The Court also agrees with TEI that Nazon's Resignation does not amount to a constructive discharge and, thus, was not an adverse employment action.  "A constructive discharge constitutes an adverse employment action." Rosen v. N.Y.C. Dep't of Educ., No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *6 (S.D.N.Y. Aug. 27, 2019) (citing Shapiro v. NY. City Dep't of Educ., 561 F. Supp. 2d 413, 424 (S.D.N.Y. 2008)). "A 'constructive discharge occurs when an

employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" Id. (quoting Trachtenberg, 937 F. Supp. At 468). Accordingly, "[t]o state a claim for constructive discharge, an employee must allege facts indicating (1) 'the employer's intent to create an intolerable environment' and (2) 'work conditions so intolerable that [a reasonable person] would have felt compelled to resign.'" Connolly v. Equity Servs., Inc., 756 F. App'x 83 (2d Cir. 2019) (quoting Shultz, 867 F.3d at 308). "Working conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 152 (2d Cir. 2003). "Dissatisfaction with work assignments and 'routine disagreements with supervisors or mild criticisms [ ] are simply insufficient to establish the sort of intolerable working conditions necessary to a constructive discharge claims.'" Pfizenmayer, 2017 WL 5468319, at *9 (quoting Gerardi v. Huntington Union Free Sch. Dist., 124 F.Supp.3d 206, 223 (E.D.N.Y. 2015)). "Nor is the test merely whether the employee's working conditions were difficult or unpleasant." Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993).

Here, Nazon "fails to allege, beyond the speculative level, that [his] working conditions 'were so difficult or unpleasant that a reasonable person . . . would have felt compelled to resign.'" Silberman v. Atl. Dialysis Mgmt. Servs., LLC, No. 17 Civ. 7019 (WHP), 2018 WL 4335510, at *4 (S.D.N.Y. Sept. 11, 2018 (quoting Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 73 (2d Cir. 2000)). To support his constructive discharge claim, Nazon relies on the 2020 Mask Incident, the 2020 Vacation Time Incident, the 2020 Welcome Back Bag Incident, the 2020 Mathew Incident, and the Warning. (ECF No. 13). These allegations, however, "do not constitute

the sort of intentionally oppressive working conditions that courts have found necessary to establish a constructive discharge." Pollock v. Shea, 568 F. Supp. 3d 500, 514 (S.D.N.Y. 2021) (finding employee failed to plead gender-based constructive discharge claim where her employer denied her desired positions, left her reporting to a male supervisor, and made disparaging remarks on three occasions); see Davis v. Goodwill Indus. of Greater N.Y. & N.J., Inc., 2017 WL 1194686, at *1–4, *12 (S.D.N.Y. Mar. 30, 2017) (dismissing claim for constructive discharge under the ADEA, ADA, and Title VII where an employer falsely accused an employee of missing her shift; spoke to her about arriving late, despite not speaking to other late employees; treated employees of another race more favorably; and addressed the employee in an overly formal manner to highlight her more advanced age); Trachtenberg, 937 F. Supp. 2d at 468, 472 (finding that the plaintiff failed to plead constructive discharge under the ADEA where she alleged that her supervisor subjected her to "excessive scrutiny"; stared at her in an effort to intimidate her; gave her negative evaluations; moved her to a poorly ventilated, windowless office; and denied her training opportunities).

Accordingly, the Court finds that, except for the 2020 Vacation Time Incident, Nazon has failed to allege that he suffered an adverse employment action.  The Court proceeds to analyze whether Nazon plausibly alleges that the 2020 Vacation Time Incident occurred under circumstances suggesting race, sex, or national origin discrimination.

### ii.   Inference of discrimination

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable

treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's [adverse employment action]." Littlejohn v. City of New York, 795 F.3d 297, 312 (2d Cir. 2015) (quoting Leibowitz, 584 F.3d at 502). "[A] claim for discrimination . . . is properly dismissed where the plaintiff fails 'to plead any facts that would create an inference that any adverse action taken by any defendant was based upon' the protected characteristic." Humphries v. City Univ. of New York, No. 13 Civ. 2641 (PAE), 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013) (quoting Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007)).

Where a plaintiff alleges differential treatment, he may establish an inference of discrimination by alleging "that he was treated less favorably than similarly situated employees" outside the protected class. Brown v. Daikin Am. Inc., 756 F.3d 219, 229 (2d Cir. 2014). To do so, "a plaintiff must allege that '[]he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self.'" Id. at 230 (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). Allegations of "adverse actions taken against employees who are not similarly situated" do not "establish an inference of discrimination." Littlejohn, 795 F.3d at 312. "[W]hether two employees are similarly situated" typically "presents a question of fact, rather than a legal question to be resolved on a motion to dismiss." Brown, 756 F.3d at 230 (internal citations omitted). At the pleading stage, however, "it is insufficient for a plaintiff to make naked assertions of disparate treatment without factual allegations indicating those employees treated differently were similarly situated." Sosa v. N.Y.C. Dep't of Educ., 368 F. Supp. 3d 489, 514 (E.D.N.Y. 2019). The "plaintiff must still identify at least one comparator to support a minimal inference of discrimination" to survive a motion to dismiss. Goodine v. Suffolk Cty. Water Auth., No. 14 Civ. 4514 (JS) (ARL), 2017 WL 1232504, at *4 (E.D.N.Y. Mar. 31, 2017).

The Court agrees with TEI that Nazon fails to plausibly allege that the 2020 Vacation Time Incident occurred under circumstances giving rise to an inference of discrimination.  Nazon does not allege that any TEI employees made "ethnically degrading" or other "invidious comments" about any of his protected categories, or that it treated employees not in the protected group more favorably.  Littlejohn, 795 F.3d at 312.  While Nazon alleges that TEI similarly deducted vacation days from Noel, "an older Haitian black man" (ECF No. 13 at 4 ¶ 29, 5 ¶ 38), this allegation is "too tenuous to suggest discriminatory animus." Felder v. Madison Square Garden, No. 15 Civ. 4038 (GBD) (DF), 2017 WL 9538169, at *11 (S.D.N.Y. Jan. 25, 2017) (finding plaintiff failed to allege plausible inference of discriminatory discharge based on race where he alleged, inter alia, that "another Black employee was also terminated at around the same time"), adopted by, 2017 WL 1011493 (S.D.N.Y. Mar. 15, 2017).  With no allegations plausibly suggesting that the 2020 Vacation Time Incident occurred under circumstances giving rise to an inference of race, sex, or national origin discrimination, Nazon's Title VII and Section 1981 Discrimination Claims fail as a matter of law.

*                              *                              *

Accordingly, for the reasons set forth above, the Court respectfully recommends that Nazon's ADA, ADEA, Title VII, and Section 1981 Discrimination Claims be DISMISSED.

## C. **Retaliation Claims**

TEI argues that Nazon's retaliation claims fail because he "has failed to plead facts to plausibly suggest he can satisfy elements two and three" of a retaliation claim, i.e., that he suffered an adverse employment action or that there was a causal connection between such action and his engagement in protected activity.  (ECF No. 20 at 13–17).  The Court focuses its

analysis on these two elements as applied to Nazon's claims under the ADA, ADEA, Title VII, and Section 1981 (the "Federal Retaliation Claims").

### 1. Legal Standards

Retaliation claims under Title VII, Section, 1981, the ADA, and the ADEA are analyzed under the same legal framework. Azkour v. Haouzi, No. 11 Civ. 5780 (RJS) (KNF), 2012 WL 1658349, at *4 (S.D.N.Y. May 11, 2012). To state claim for retaliation, "a plaintiff must show: (1) []he was engaged in protected activity; (2) the employer was aware of the activity; (3) the employee suffered an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." Glascoe, 2020 WL 1272120, at *9. "[F]or a retaliation claim to survive a motion for judgment on the pleadings or a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015).

### 2. Application

#### a. Adverse employment action

For purposes of a retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination" and "'is not limited to discriminatory actions that affect the terms and conditions of employment.'" Id. (quoting Burlington, 548 U.S. at 64).

Here, TEI argues that (i) the Warning did not constitute an adverse employment action, and (ii) because Nazon's Resignation was not a constructive discharge, it also did not constitute an adverse employment action.  (ECF No. 20 at 14–15).  The Court agrees, as discussed above, that Nazon's Resignation was not a constructive discharge.  (See § IV.B.2.c.i supra).  The Court also agrees that the Warning does not constitute an adverse employment action for purposes of a retaliation claim.  See Richard v. N.Y.C. Dep't of Educ., No. 16-CV-957 (MKB), 2022 WL 4280561, at *31 (E.D.N.Y. Sept. 15, 2022) ("Courts in this Circuit have found that, without more, performance warnings and reprimands do not constitute materially adverse actions because they are too trivial to dissuade a reasonable person from complaining.") (collecting cases).

TEI does not address whether the 2020 Vacation Time Incident, 2020 Mask Incident, 2020 Welcome Back Bag Incident, or 2020 Mathew Incident constitute adverse employment actions under the applicable anti-retaliation laws.  The Court concludes, however, that, as a matter of law, the 2020 Mask Incident, 2020 Welcome Back Bag Incident, and 2020 Mathew Incident "are not so harmful or materially adverse as to well dissuade a reasonable worker from making or supporting a charge of discrimination."  Dearden v. GlaxoSmithKline LLC, No. 15 CIV. 7628, 2017 WL 4084049, at *8 (S.D.N.Y. Sept. 14, 2017) (citation omitted) (finding that the plaintiff failed to plead adverse employment action in support of retaliation claim based on allegations that her employer "sent [her] rude emails, complained about [her] work performance, micromanaged [her] and [her] schedule, required [her] to engage in product knowledge assessments at inconvenient times, and canceled ride-alongs with [her]").  Having already determined that the 2020 Vacation Time Incident constitutes an adverse employment action under the stricter standard applied to Nazon's discrimination claims (see § IV.B.b supra), the Court proceeds to

38

consider whether Nazon has plausibly alleged a causal connection between 2020 Vacation Time Incident and any protected activity.

### b. Causal connection

 "To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.'" Duplan v. City of New York, 888 F.3d 612, 625 (2d Cir. 2018) (quoting Vega, 801 F.3d at 90–91).[8] "It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." Vega, 801 F.3d at 90–91. In this context, however, but-for causation does not "require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Id. at 91. "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." Duplan, 888 F.3d at 625. When temporal proximity is the basis asserted to support an inference of retaliation for purposes of establishing a prima facie case, "the proximity must be 'very close.'" Dhar v. City of New York, 655 F. App'x 864, 865–66 (quoting Abrams v. Dep't of Pub. Safety, 764 F.3d 244, 254 (2d Cir. 2014) (summary order)).

The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action" for the purpose of allowing the district courts "to exercise [their] judgment about the permissible inferences that can be

---

[8] "The higher but-for causation standard does not apply to NYCHRL retaliation claims. To survive a motion to dismiss, a plaintiff need only allege that retaliatory animus played some role in the employer's decision." Cardwell v. Davis Polk & Wardwell LLP, No. 19 Civ. 10256 (GHW), 2020 WL 6274826, at *37 (S.D.N.Y. Oct. 24, 2020). "[T]he Second Circuit has yet to decide explicitly whether the but-for causation standard applies to [retaliation] claims under the NYSHRL[.]" Id. at *36 n.24.

drawn from temporal proximity in the context of particular cases." Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) (comparing Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45–46 (2d Cir. 1980), in which a causal connection was found despite the passage of eight months between the complaint and the retaliatory act, with Hollander v. American Cyanamid Co., 895 F.2d 80, 85–86 (2d Cir. 1990), in which three months between the complaint and the adverse action was too long to establish a causal connection); see also Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013) (finding "four-month time span sufficient in this case to establish causation"); Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252 F.3d 545, 554–55 (2d Cir. 2001) (reviewing cases where temporal gap of eight months was the longest found to suggest causal relationship).  Many other courts in this Circuit "have held that periods of two months or more defeat an inference of causation." Ragin v. E. Ramapo Cent. Sch. Dist., No. 05 Civ. 6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010); see Zabar, 2020 WL 2423450, at *7 (collecting cases in which courts noted that the passage of two to three months between protected activity and adverse employment action defeated inference of causation).  Ultimately, a district court must consider both "the temporal proximity and the particular context" of the case before it. Summa, 708 F.3d at 128.

Reading Nazon's allegations in the Amended Complaint to raise the strongest possible arguments, the Court finds that he has alleged two instances of protected activity: (i) the December 2019 Complaint (ECF No. 13 at 5 ¶ 35); and (ii) the June 2020 Complaint. (Id. at 6 ¶ 40). Accordingly, the Court analyzes whether Nazon plausibly alleges a causal connection between these complaints and any subsequent adverse employment action.

The Court first finds that Nazon fails to plausibly allege that the December 2019 Complaint had any causal connection to 2020 Vacation Time Incident.  As an initial matter, at least 107 days passed between the December 2019 Complaint and the 2020 Vacation Time Incident, which occurred, at the earliest, on April 3, 2020, when Nazon informed TEI he had COVID-19. (See ECF No. 13 at 5 ¶¶ 35, 38).  Moreover, nothing in the Amended Complaint plausibly suggests that any action by TEI was motivated by retaliatory animus.  (See § IV.B.2 supra).  Accordingly, Nazon's retaliation claims based on the December 2019 Complaint fail as a matter of law. See McDowell v. N. Shore-Long Is. Jewish Health Sys., Inc., 788 F. Supp. 2d 78, 83 (E.D.N.Y. 2011) (dismissing retaliation claim where "the alleged retaliatory act occurred more than three months after the alleged protected activity, and nothing in the complaint aside from the temporal proximity between these two events shows a retaliatory motive"); De Figueroa v. New York, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (noting that "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference.")).

The Court also finds that Nazon fails to allege a retaliation claim based on the June 2020 Complaint.  Initially, it appears that the June 2020 Complaint post-dates the 2020 Vacation Time incident, precluding any finding of a causal connection.  (See ECF No. 13 at 5–6 ¶¶ 36, 38, 40).  In any event, as with the December 2019 Complaint, Nazon fails to allege any facts suggesting a retaliatory motive. See Bermudez v. Bon Secours Charity Health Sys., Inc., No. 19 Civ. 7836 (AKH), 2020 WL 104992, at *4 (S.D.N.Y. Jan. 9, 2020) ("In the absence of a direct allegation of retaliatory animus or circumstantial evidence from which the court can infer retaliation, a retaliation claim must be dismissed."); Jackson v. Elmhurst Hosp. Ctr., No. 10-CV-5248 (RRM) (RER), 2012 WL 868965, at *8 (E.D.N.Y. Mar. 14, 2012) (dismissing retaliation claim where the plaintiff made "only

conclusory allegations connecting any of her alleged protected activity with any alleged adverse employment actions").

*        *        *

Accordingly, for the reasons set forth above, the Court respectfully recommends that Nazon's Federal Retaliation Claims be DISMISSED.

**D. Hostile Work Environment Claims**

TEI argues that the Court should dismiss Nazon's hostile work environment claims because he fails to plausibly allege that (i) "he suffered harassment sufficiently severe or pervasive to alter the conditions of his employment," and (ii) "such treatment was related to his protected characteristics." (ECF No. 20 at 17–20) (capitalization omitted). In his Opposition, to argue that he states a hostile work environment claim, Nazon relies on the (i) the 2003 Frank Incident, (ii) 2009 Wilson Incident, (iii) 2010 Aquino Incident, (iv) 2011 Murphy Incident, and (v) 2015 Unpaid Wages Incident. (ECF No. 22 at 3, 5). The Court focuses its analysis on Nazon's hostile work environment claims under the ADA, ADEA, Title VII, and Section 1981 (the "Federal Hostile Work Environment Claims").

**1. Legal Standards**

"To establish a hostile work environment claim under federal . . . law, a plaintiff must adequately plead that: (i) 'the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and (ii) 'a specific basis exists for imputing the conduct that created the hostile environment to the employer.'" Karupaiyan v. CVS Health Corp., No. 19 Civ. 8814 (KPF), 2021 WL 4341132, at *24 (S.D.N.Y. Sept. 23, 2021) (quoting

Howley v. Town of Stratford, 217 F.3d 141, 153–54 (2d Cir. 2000).  "In addition, [a] Plaintiff must demonstrate that he 'was subjected to the hostility because of [his] membership in a protected class.'"  Id. (quoting Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999)).  "This legal framework applies to hostile work environment claims brought under Title VII, Section 1981, the ADEA, [and] the ADA . . . ."  Id. (collecting cases).[9]

To plead a valid hostile work environment claim under these statutes, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  Littlejohn, 795 F.3d at 321.  "Although a continuing pattern of hostile or abusive behavior is ordinarily required to establish a hostile environment, a single instance can suffice when it is sufficiently egregious."  Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001).  "Courts analyzing hostile work environment claims consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance.'"  Whitley v. Montefiore Med. Grp., No. 13 Civ. 4126 (LTS), 2016 WL 1267788, at *9 (S.D.N.Y. Mar. 30, 2016) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)).  "This inquiry has both objective and subjective prongs: 'the misconduct must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be

---

[9] "[H]ostile work environment claims under the NYCHRL require independent analysis, as 'plaintiff need only demonstrate . . . that [he] has been treated less well than other employees because of [a protected characteristic].'"  Karupaiyan, 2021 WL 4341132, at *25 (quoting Leung v. N.Y. Univ., 580 F. App'x 38, 40 (2d Cir. 2014)).  Similarly, "[s]everal amendments to the NYSHRL were signed into law on August 12, 2019, including eliminating [the] 'severe and pervasive' standard for establishing a hostile work environment."  Livingston v. Roosevelt Union Free Sch. Dist., No. 17-CV-4189 (JMA) (JMW), 2022 WL 2070325, at *6 (E.D.N.Y. May 16, 2022).

abusive.'"  Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (internal citations omitted)).  "Severity is [the] hallmark of a hostile work environment claim[]," which is "not intended to promote or enforce civility, gentility or even decency."  Fernandez v. City of New York, No. 12 Civ. 2125 (RWS), 2012 WL 2402642, at *4 (S.D.N.Y. June 26, 2012) (quoting Ennis v. Sonitrol Mgmt. Corp., No. 02 Civ. 9070, 2006 WL 177173, at *9 (S.D.N.Y. Jan. 25, 2006)).

### 2. Application

The Court finds that Nazon's Federal Hostile Work Environment Claims fail as a matter of law.  As an initial matter, the Court notes that, to support his hostile work environment claim, Nazon relies solely on conduct that falls outside the statute of limitations period, and fails even to mention the conduct that the Court has found to be timely.  (ECF No. 22 at 3, 5; see § IV.A.3 supra).  Even if the Court were to consider all his allegations, however, the conduct Nazon complains of "do[es] not sufficiently allege a workplace permeated with discriminatory intimidation, ridicule, and insult."  Rettino v. N.Y.C Dep't of Educ., No. 19 Civ. 5326 (JGK), 2020 WL 4735299, at *4 (S.D.N.Y. Aug. 14, 2020); see Nugent v. St. Lukes-Roosevelt Hosp. Ctr., 303 F. App'x 943, 945 (2d Cir. 2008) (finding that that derogatory language from supervisor, dismissive comments from management, and intense scrutiny of plaintiff were together "insufficiently severe and pervasive" to create hostile work environment); Alvarado, 404 F. Supp. 3d at 781–82 (rejecting hostile work environment claim predicated on comments that were "tasteless, meanspirited, and sound of ignorance and bias," and explaining that Title VII "does 'not prohibit employers from maintaining nasty, unpleasant workplaces, or even ones that are unpleasant for reasons that are due to [a] protected characteristic"); Gibson v. Wyeth Pharms., Inc., No. 07 Civ. 946 (LTS), 2011 WL 830671, at *11 (S.D.N.Y. Mar. 9, 2011) (finding that allegations of explicitly

racial comments, three-day suspension, forced overtime, and written warning were insufficient to establish hostile work environment).  In any event, as discussed above (see §§ IV.B–C supra), Nazon alleges no facts to suggest TEI subjected him to the purported hostility because of any of his protected characteristics.  See Panchishak, 2021 WL 4429840, at *5 (dismissing hostile work environment claim where "[n]one of the conduct alleged by Plaintiff . . . involve[d] comments which reference to protected categories like sex or national origin-based motives"); Trujillo, 2016 WL 10703308, at *14 ("In order to state a claim for hostile work environment based on discriminatory animus, a plaintiff must adequately plead a causal connection between his protected status and the alleged hostile work environment.") (citation omitted); Briante v. Longwood Cent. Sch. Dist., No. 15-CV-3200 (DRH) (GRB), 2016 WL 1056569, at *4 (E.D.N.Y. Mar. 16, 2016) (a "hostile work environment claim is properly dismissed [when the] plaintiff has failed to allege sufficient facts to support [the inference] that the conduct giving rise to the alleged hostile work environment occurred 'because of [his] membership in a protected class' " (quoting Ventimiglia v. Hustedt Chevrolet, No. 05-CV-4149 (DRH), 2009 WL 803477, at * 6 (E.D.N.Y. Mar, 25, 2009))).

*   *   *

Accordingly, for the reasons set forth above, the Court respectfully recommends that Nazon's Federal Hostile Work Environment Claims be DISMISSED.

### E.  NYSHRL and NYCHRL claims

"A district court may decline to exercise supplemental jurisdiction over a claim if it 'has dismissed all claims over which it has original jurisdiction.'"  Fitzgibbons v. Putnam Dental Assocs., P.C., 368 F. Supp. 2d 339, 345 (S.D.N.Y. 2005) (quoting 28 U.S.C. § 1367(c)).  In deciding whether

to exercise supplemental jurisdiction over state or local claims, the district court has "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case." Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 275 (S.D.N.Y. 1996) (quoting Cushing v. Moore, 970 F.2d 1103, 1110 (2d Cir. 1992)).

Because all of Nazon's federal claims are subject to dismissal, I respectfully recommend that the District Court exercise its discretion to dismiss without prejudice his NYSHRL and NYCHRL claims.  See Fitzgibbons, 368 F. Supp. 2d at 345 (dismissing state law claims where all federal claims were dismissed).

### F.  Nazon's Request for Leave to Amend Should be Denied

In his Opposition, Nazon "requests that the Court grant [him] leave to amend [his] complaint to address any deficiencies identified by the Court."  (ECF No. 22 at 1).

Courts "ordinarily recommend that a pro se plaintiff be given leave to amend his complaint to replead all factually insufficient claims." Huggins v. Schriro, No. 14 Civ. 6468 (GBD) (JLC), 2015 WL 7345750, at *9 (S.D.N.Y. Nov. 19, 2015); see Grullon v. City of New Haven, 720 F.3d 133, 140 (2d Cir. 2013) ("[A] pro se complaint generally should not be dismissed without granting the plaintiff leave to amend at least once[.]"); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

"Here, however, [Nazon] has already had the opportunity to amend his complaint once[,] . . . [and] the Court has liberally construed [his] [O]pposition to the [M]otion [] in such a way that it effectively amounts to another pleading." Dash v. Mayers, No. 19 Civ. 414 (GBD) (JLC), 2020 WL 1946303, at *9 (S.D.N.Y. Apr. 23, 2020) (recommending that pro se plaintiff "not be granted leave to further amend his pleadings" because "repleading would be futile"), adopted by 2020

WL 3057133 (S.D.N.Y. June 9, 2020); (see ECF Nos. 1; 13; see also § II.A, supra).  "Accordingly, because [Nazon] has now effectively had two opportunities to amend his complaint and any further attempt would be futile for the various reasons set forth in this Report, he should not be granted leave to further amend his pleadings."  Dash, 2020 WL 1946303, at *9;  see Evans v. City of New York, No. 21 Civ. 8660 (JPC), 2022 WL 1172740, at *4 (S.D.N.Y. Apr. 20, 2022) ("[B]ecause [plaintiff] has effectively had an opportunity to amend the Complaint through his Opposition, and neither the Complaint nor the Opposition, construed liberally, states a viable claim . . . , nor indicates that a valid claim . . . might be stated, the Court does not grant [plaintiff] leave to amend his pleadings . . . .");  Huggins, 2015 WL 7345750, at *9 (recommending denial of leave to amend as futile where pro se plaintiff had two opportunities to amend), adopted by 2016 WL 680822 (S.D.N.Y. Feb. 18, 2016).

Accordingly, the Court respectfully recommends that Nazon's Request be DENIED.

## V.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends that TEI's Motion be GRANTED, Nazon's Request be DENIED, and this action be DISMISSED with prejudice as to Nazon's claims under the ADA, ADEA, Title VII and Section 1981, and without prejudice as to his claims under the NYSHRL and NYCHRL.  TEI shall promptly serve a copy of this Report and Recommendation on Nazon and, by **November 23, 2022**, file proof of service on the docket.

The Clerk of Court is respectfully directed to mail a copy of this Report and Recommendation to Plaintiff.

Dated:      New York, New York
            November 22, 2022

_Sarah L. Cave_

**SARAH L. CAVE**

**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)).  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Such objections, and any response to objections, shall be filed with the Clerk of the Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Torres.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.**  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), (d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).  If Nazon does not have access to cases cited in this Report and Recommendation that are reported on Westlaw, he may request copies from Defendant's counsel.  See Loc. Civ. R. 7.2.